*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re HERNANDEZ/BRAY, Minors.

UNPUBLISHED
October 10, 2019

No. 347532
Wayne Circuit Court
Family Division
LC No. 16-522655-NA

Before: CAVANAGH, P.J., and BECKERING and GADOLA, JJ.

PER CURIAM.

Respondent mother appeals as of right an order terminating her parental rights to four minor children under MCL 712A.19b(3)(b)(*ii*) (had the opportunity to prevent sexual abuse but failed to do so), and (j) (reasonable likelihood of harm if returned).[1] Respondent also appeals as of right an order terminating her parental rights to a fifth minor child under MCL 712A.19b(3)(b)(*ii*), (c)(*i*) (conditions leading to adjudication continue to exist), and (j). We affirm both orders.

In April 2016, the Wayne County Department of Health and Human Services (DHHS) filed a temporary custody petition as to respondent and both fathers of the children, A. Hernandez and D. Bray. Respondent was living with D. Bray and all five of the children. DHHS alleged unsuitable housing conditions, including bed bug infestation, cat feces throughout the house, lack of a working stove, domestic violence between respondent and D. Bray, physical abuse of the children, neglect, lack of proper supervision, numerous prior cases with Child Protective Services (CPS), and alcohol abuse. Although the family was receiving services through Family Team Building Solutions (FTBS), they did not appear to have benefited. The

---

[1] At the conclusion of the bench trial, according to the transcript, the court stated that it was terminating respondent's parental rights as to the four children under MCL 712A.19b(3)(**g**). This appears to have been a typographical error because the written order states that termination was ordered under MCL 712A.19b(3)(**j**). "[A] court speaks through its written orders and judgments, not through its oral pronouncements." *In re Contempt of Henry*, 282 Mich App 656, 678; 765 NW2d 44 (2009).

trial court ordered a treatment plan for all three parents. Respondent's service plan included substance abuse counseling, attending AA and NA, weekly alcohol and drug screens, parenting classes, family therapy, psychological assessment, domestic violence counseling, as well as obtaining suitable housing and income.

Both fathers were consistently in compliance with their service plans and progressed from supervised visits with the children to unsupervised visits to overnight visits. In fact, ultimately, both fathers were awarded custody of the children after successfully completing their services plans.[2] Respondent, however, was repeatedly early-terminated from several court-ordered services. By the end of March 2017, respondent still was not in compliance with her service plan, including that she did not regularly drug screen but, when she did screen, she was positive for alcohol and Tramadol. By October 2017, respondent still had not attended AA or NA meetings, and had just completed her intake for parenting classes as well as for individual therapy. In January 2018, it was reported that respondent was participating in individual and substance abuse counseling, and had been attending AA/NA meetings, but she admitted to drinking. She still had not regularly drug screened, and had only completed seven of 14 parenting classes. Respondent was also in danger of being early-terminated from the parent/partner program because she was not regularly participating. She also missed visits, and was usually late to visits, with her youngest child, D, who was still in foster care.

In May 2018—about two years after this matter began, it was reported that respondent was terminated from substance abuse therapy and the parent/partner program for non-compliance and because she was not benefiting from the services. Respondent also had three positive drug screens for cocaine, had not attended AA or NA since March, and continued to be late and miss visits with her child still in foster care. Respondent still was only allowed supervised visitation because of her lack of progress.

Further, in May 2018, DHHS filed a supplemental petition for the termination of respondent's parental rights as to D, who was in foster care, and an original petition for the termination of respondent's parental rights as to the four other minors living with their father, A. Hernandez. The petitions alleged that it recently came to light that respondent's minor daughter, J, was sexually abused when she was four, eight, and nine years old by her older half-brother, respondent's oldest child, who had lived with them in respondent's home. He touched her "everywhere," including where babies were made when she was eight and nine years old. The petition noted that a CPS worker spoke to respondent in April 2018, and she admitted that her son would touch J and she felt that she did not protect J. Respondent also did not seek law enforcement action or any medical treatment for J after the abuse was disclosed. The petitions

---

[2] A. Hernandez regained custody of his four children in July 2017, and the wardship was terminated. D. Bray regained custody of his child in December 2016, and the wardship was terminated. However, in March 2017, a petition was filed to remove the child from D. Bray and it was granted. D. Bray regained custody of his child, however, in March 2019 and the wardship was again terminated.

sought the termination of respondent's parental rights to the five minor children under MCL 712A.19b(3)(b)(*ii*), (c)(*i*), (c)(*ii*), (g), and (j).

At the preliminary hearing on the petitions, the DHHS petitioner testified that respondent admitted that she was aware of the sexual abuse and should have done more, but she continued to allow her oldest son to watch the children. It was reported that J had been diagnosed with Post Traumatic Stress Disorder. Further, respondent had not had contact with the children since July 2017. Petitioner requested that respondent be prohibited from having contact with the children. The court authorized the petitions and ordered that respondent was to have no contact with the children. The court noted that respondent had knowledge of the sexual abuse but failed to report it to the court—which had jurisdiction at that time—and failed to tell her attorney, the children's attorney, CPS, or the police. Further, despite knowing about the sexual abuse, respondent allowed her oldest son to continue to have unsupervised contact with the children. And respondent had abandoned the children in that she did not visit, support, or plan for them since July 2017.

In July 2018, a bench trial was conducted. J testified about the sexual abuse by respondent's oldest son, who was about nine years older than J. She was about five or six years old the first time it happened, and he touched her butt and made her touch his penis over his clothes. J told respondent and she did not do anything about it. The second time she was about eight years old when he touched her butt and made her touch his penis over his clothes again. J ran out of the house and told her friend's mother, who then told respondent. Respondent slapped her oldest son and had him leave the house for good. J saw him again, though, after she was out of foster care and he touched her butt again. J testified that she did not see respondent anymore, did not want to see her, and did not want respondent to be her mom anymore. She did not think her mom could keep her safe.

In September 2018, the bench trial continued. J again testified about the sexual abuse by respondent's oldest son. She explained that the second time he touched her, her friend's mother told respondent. Respondent told J that it was not her fault and what he did to her was not a good thing. The next witness was a CPS worker, who testified that respondent was not compliant with services, had a substance abuse history, did not protect J from sexual abuse, and could not keep the children safe as evidenced by respondent's history. Accordingly, the CPS worker believed that respondent's parental rights should be terminated and that termination was in the best interests of all five children.

At the dispositional review hearing in September 2018 pertaining to the child still in foster care, it was again reported that respondent was mostly non-complaint with her service plan. She was early-terminated from individual therapy because of non-compliance, had not been participating in AA or NA, and had missed 34 drug screens. The CPS worker testified that, although respondent was complaint with parenting classes, she had not benefited from them because she was missing parenting time sessions and had positive drug screens.

In October 2018, the bench trial continued. The foster care supervisor testified that respondent was still not fully compliant with her service plan. She was terminated from substance abuse counseling for noncompliance and did not provide weekly drug screens. She had not attended individual therapy or domestic violence therapy since about August 2018, and

failed to consistently visit her youngest child who was in foster care. The supervisor believed that respondent's parental rights should be terminated, particularly because respondent failed to protect one of her children from sexual abuse and it was concerning that she would fail to protect her other children as well.

In November 2018, the bench trial continued with testimony from respondent's mother, Glenda Holt-Lindman. She admitted that when the children first came into care, respondent's home was infested with bed bugs and respondent drank every day, all day. But respondent did not drink like that anymore and Holt-Lindman took her to AA or NA meetings herself. Holt-Lindman saw the children almost every day and she either took them to respondent's house every week or respondent saw them at Holt-Lindman's house every week. She did not know why J testified that she had not seen respondent. And Holt-Lindman heard J testify about the sexual abuse but she did not believe her; she did not believe that J was telling the truth. Respondent also testified that she did not know that her oldest son touched J when she was really young, but someone told her that he had touched J when she was nine years old and respondent removed him from the house. Respondent admitted that she had not completed domestic violence counseling, was terminated from substance abuse counseling, and failed to comply with drug screens. She denied using cocaine at that time and denied drinking for a month. She believed that she had a bond with the children and that they loved her, and she loved them too. She saw them when she could. Respondent acknowledged that her youngest son had been in foster care for quite some time, but felt that she was doing her best.

Following respondent's testimony and closing arguments, the trial court rendered its decision. The court noted that respondent was not in substantial compliance with her service plan. While respondent initially had an alcohol problem, she later had a cocaine problem but had not participated in substance abuse therapy or drug screening as ordered. Her visits with the children were sporadic and she failed to complete domestic violence therapy. In November 2018 respondent was no closer to having the children home than she was in April 2016 when the children were removed from her care. The court noted that J's testimony regarding her sexual abuse was consistent; she was touched on three separate occasions by her older brother. Nevertheless, respondent did not have either child go to therapy or pursue any other action in that regard. Accordingly, the trial court concluded that clear and convincing evidence supported the termination of respondent's parental right to her four minor children under MCL 712A.19b(3)(b)(*ii*) and (j). And clear and convincing evidence supported the termination of respondent's parental rights to her youngest son, who remained in foster care, under MCL 712A.19b(3)(b)(*ii*), (c)(*i*), and (j). Further, there was a preponderance of evidence that termination would be in the best interests of the children. Thereafter, orders terminating respondent's parental rights to the children were entered by the court. This appeal followed.

Respondent argues that the trial court's decision to terminate her parental rights was clearly erroneous.[3] We disagree.

---

[3] Although respondent references the termination of her parental rights under MCL 712A.19b(3)(g), as explained above, the court order does not reference that statutory provision.

To terminate parental rights, the trial court must find at least one of the statutory grounds for termination listed in MCL 712A.19b(3) has been established by clear and convincing evidence. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). We review the trial court's factual findings and ultimate decision for clear error. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). A decision is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake was made. *In re Olive/Metts Minors*, 297 Mich App at 41 (citation omitted).

Respondent's parental rights were terminated under MCL 712A.19b(3)(b)(*ii*), (c)(*i*), and (j), which permit termination under the following circumstances:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:
>
> * * *
>
> (*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> * * *
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Thus, we decline to address such argument. And, in any case, only one statutory ground for termination must be proved and the other stated statutory grounds were properly established. See *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011).

-5-

Respondent first argues that the trial court clearly erred in concluding that she had the opportunity but failed to prevent the sexual abuse of J by her oldest son as required for termination of her parental rights under MCL 712A.19b(3)(b)(*ii*). However, J testified that the first instance of sexual abuse by respondent's oldest son happened when she was about five or six years old and she told her mother, but respondent did not do anything about it. Instead, respondent's oldest son was allowed to remain in the same home as J and he was allowed to watch the children unsupervised while respondent was not home. Respondent's oldest son then sexually abused J again when she was about eight years old. While respondent denied having knowledge of the first instance of sexual abuse, the trial court found J's testimony credible and we accord "deference to the trial court's special opportunity to judge the credibility of the witnesses." *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009). Thus, contrary to respondent's argument, the trial court did not clearly err in concluding that respondent had the opportunity to prevent J's sexual abuse and failed to do so. And it is well-established that "[e]vidence of how a parent treats one child is evidence of how he or she may treat the other children." *In re Hudson*, 294 Mich App 261, 266; 817 NW2d 115 (2011). That respondent ignored or disregarded the severe threat to J's health, welfare, and safety is evidence of how she would also fail to respond to any threats to the other children's health, welfare, and safety. Accordingly, respondent's parental rights to all five children were properly terminated under MCL 712A.19b(3)(b)(*ii*).

Next, respondent argues that the trial court clearly erred when it terminated her parental rights to D under MCL 712A.19b(3)(c)(*i*) because the conditions that led to the adjudication were rectified. However, throughout the duration of these proceedings respondent had never been in full compliance with her service plan. For example, respondent's service plan as of May 2017 included that respondent would complete and benefit from parenting classes, individual therapy, domestic violence therapy, substance abuse therapy, AA and NA meetings, drug and alcohol screens, as well as maintain suitable housing. But a year later, in May 2018, it was reported that respondent was terminated from substance abuse therapy and the parent/partner program for non-compliance and because she was not benefiting from the services. She also had three positive drug screens for cocaine and had not attended AA and NA meetings. Respondent was also often late to parenting time visits with D and missed several visits. In September 2018, it was reported that respondent was early-terminated from individual therapy and substance abuse therapy for non-compliance, had not been participating in AA and NA meetings, had missed 34 drug screens, and had missed parenting time visits with D. At trial in November 2018, respondent admitted that she had not completed substance abuse or domestic abuse counseling, failed to complete the drug screens, and had not done what the trial court required her to do in order to get her children back. Respondent denied using cocaine at that time, but only denied drinking for one month—despite the fact that alcohol abuse was one of the primary reasons for these child protective proceedings which began in April 2016 and her youngest son was still in foster care. Nevertheless, respondent testified that she felt she was doing her best. Thus, contrary to respondent's argument, the trial court did not clearly err in concluding that the conditions that led to adjudication continued to exist and there was no reasonable likelihood that they would be rectified within a reasonable time considering D's age. Accordingly, respondent's parental rights to D were properly terminated under MCL 712A.19b(3)(c)(*i*).

Respondent also argues that the trial court clearly erred when it terminated her parental rights to the children under MCL 712A.19b(3)(j) because there was "every likelihood that mother would be diligent in protecting her children from harm." But that is not what respondent demonstrated throughout these proceedings. To the contrary, respondent consistently put her own needs above those of her children by refusing to complete court-ordered services that would establish and demonstrate her ability to parent and protect these children from harm. In particular, respondent refused to maintain a sober lifestyle free of drug and alcohol abuse, refused to complete individual, substance abuse, and domestic violence counseling, and clearly failed to protect J from sexual abuse by her older half-brother. Even when respondent did learn of the sexual abuse, respondent failed to act in the best interests of J by reporting the abuse and seeking treatment for J. Accordingly, termination of respondent's parental rights to all five children under MCL 712A.19b(3)(j) was supported by clear and convincing evidence.

In summary, the trial court did not clearly err when it terminated respondent's parental rights under the stated grounds.

Finally, respondent argues that the court committed clear error in finding that termination of her parental rights was in the children's best interests. After review for clear error, we disagree. See *In re Jones*, 286 Mich App 126, 129; 777 NW2d 728 (2009).

A trial court must order termination of parental rights if a statutory ground for termination is established by clear and convincing evidence and the trial court finds by a preponderance of the evidence that termination is in the child's best interests. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). In making that determination, the court may consider a variety of factors, including the parent's parenting ability, the child's age and bond to the parent, and the child's need for permanency, stability, and finality. See *In re Olive/Metts Minors*, 297 Mich App at 41-42; *In re VanDalen*, 293 Mich App 120, 141-142; 809 NW2d 412 (2011). The parent's history of domestic violence, compliance with her case service plan, and visitation history with the child may also be considered by the trial court. *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). After considering the entire record, the trial court concluded that a preponderance of the evidence demonstrated that it was in the children's best interests to terminate respondent's parental rights and we are not left with a definite and firm conviction that a mistake was made. See *In re Olive/Metts Minors*, 297 Mich App at 41.

This matter began in April 2016 and, as the trial court noted, by November 2018 respondent was no closer to having the children home than she was when they were removed from her care. As the CPS workers consistently reported, respondent did next to nothing to comply with her case service plans throughout these proceedings. While she did partially complete some services, including parenting classes, she did not prove that she benefited from such services. As stated above, respondent had a history of domestic violence but failed to complete domestic violence counseling. She had a history of substance abuse, but failed to complete substance abuse counseling, attend AA and NA meetings, and provide the required drug screens. Further, when this proceeding first began respondent had an alcohol problem but tested positive for cocaine later in these proceedings. While respondent testified that she believed the children were bonded to her, even if true, such bonding is only one factor of many to be considered. J testified that she had not seen respondent in quite some time and did not want to see respondent. Respondent was offered parenting time with her youngest son who was in

foster care and respondent failed to attend numerous visits and, when she did attend, she was consistently late. Under the circumstances of this case, the trial court did not clearly err when it concluded that termination of respondent's parental rights was in the children's best interests.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Jane M. Beckering
/s/ Michael F. Gadola